## MAMMOTH MINING CO. v. THOMAS.

Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 3,695.

1. APPEAL AND ERROR (§ 1048*)—RULINGS ON EVIDENCE—PREJUDICE.

Where, in an action for injuries to a miner by the fall of a portion of the roof, a witness, in response to a proper question not objected to, testified fully as to the character of plaintiff's work and duties, and as to the place where he was required to work, defendant was not prejudiced by the court's allowance of a leading question as to whether plaintiff's duties compelled him to go into any part of the particular chamber or winze, to which the witness' answer was not responsive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4140–4145, 4151, 4158–4160; Dec. Dig. § 1048.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. Master and Servant (§ 274*)—Injuries to Servant—Evidence.

Where, in an action for injuries to a miner by the fall of a portion of the roof in an unprotected part of a chamber, where plaintiff kept a pail of drinking water, questions asked of a miner employed in such chamber as to whether witness knew where plaintiff kept his water pail before the accident, which the witness answered that two days prior to the accident plaintiff kept it in the unguarded part of the chamber, and as to whether the witness had been ordered not to go down there to get a drink, which he answered in the negative, were not objectionable as immaterial; it being necessary for plaintiff to prove that he was in the place where he was injured in the discharge of his duty as a servant of the mine company, pursuant to its direction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 939–949; Dec. Dig. § 274.*]

3. Master and Servant (§ 232*)—Injuries to Servant—Dangerous Place.

Where a miner was temporarily in an unprotected part of a chamber, without notice of danger, to get a needed drink from his water pail, which he kept there in close proximity to his work, at the time he was injured by a fall of a portion of the roof, he did not thereby forfeit his right to the protection the discharge of his employer's duty would afford.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 678–680; Dec. Dig. § 232.*]

4. Witnesses (§ 268*)—Cross-Examination—Scope.

In an action for injuries to a miner by a fall of a portion of the roof while he was in an unprotected portion of the chamber to drink from his water pail, a witness testified for defendant on direct examination that plaintiff and he had placed a plank near the place where the latter was injured, and that plaintiff took a water pail down there. On cross-examination he testified without objection that he never had a water pail, but might have drank from plaintiff's pail, but did not do so on the day of the accident, that plaintiff always had a water pail in the unprotected part of the chamber, and that witness used to go down there to drink once or twice a day. Held, that the witness' testimony opened to cross-examination all that he knew concerning the use of the water pail, and the instructions of the employer, if any, regarding such use, and that a question whether witness had been ordered not to go to that place for a drink was proper cross-examination.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 931–948; Dec. Dig. § 268.*]

5. Trial (§ 62*)—Reception of Evidence—Rebuttal.

A skip in a mine in which plaintiff was injured was operated by a system of signal bells. As part of plaintiff's main case, witnesses had testified that plaintiff shoveled loose material into the skip from the lower part of the chamber on the morning of the accident, just after he had cleaned out the winze. Defendant then called the hoist engineer, who testified that he knew by marks on the cable to what point he lowered the skip, and that he did not lower it to the lower part of the chamber on the morning of the accident. Held, that plaintiff was entitled to show in rebuttal that, when witness signaled for the skip to come down in the winze, it always stopped wherever he wanted it to, and that the skip stopped at the lower part of the chamber immediately after plaintiff had cleaned up the bottom of the winze.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 148–150; Dec. Dig. § 62.*]

In Error to the Circuit Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by John R. Thomas against the Mammoth Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Dey, Hoppaugh & Fabian, of Salt Lake City, Utah, for plaintiff in error.

Hiram E. Booth, of Salt Lake City, Utah (E. O. Lee, Carl A. Badger, Benjamin L. Rich and Dale H. Parke, all of Salt Lake City, Utah, on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. Mr. Thomas, the plaintiff below, was employed by the Mammoth Mining Company to shovel loose material in its mine into a skip which a hoisting engine drew up to a higher level. The defendant's main shaft had been sunk to the 2,100-foot level. At the end of that level a winze or tunnel had been driven down, at an angle of about 45 degrees, a distance of about 120 feet, and at a point about 25 feet from the bottom of this winze a chamber about 15 feet high and 16 feet long had been stoped out on the right side of the winze. Planks had been placed on stulls in this chamber, so that a part of the upper portion of it above the stulls was a reasonably safe place for men to work, and Richard Bourquist, a miner, was at work in this part of the chamber, picking down the ore and waste material.

That portion of the roof of this chamber that was not protected by these stulls was composed of such loose material that it was dangerous for men to work under it, and this fact was known to the Mining Company; but the plaintiff testified that he was not aware of it. Hugh McDonald was a miner at work about 25 feet below the chamber driving the winze. On the morning of January 13, 1910, Thomas shoveled the loose material at the bottom of the winze into the skip for about an hour. Thereafter he performed like work in the upper part of the chamber, where Bourquist was engaged, and at about a quarter before 12 was in the lower and unprotected part of the chamber, on the line between the chamber and the winze, with his water pail, from which he had drank, when boulders and earth fell from the roof above and seriously injured him. There was testimony tending to show that he knew the dangerous condition of the roof above him, and that the shift boss had ordered him not to work in it; but he testified that he had received no notice of any such danger, and that the shift boss had directed him to work in that chamber that day, when he had cleaned up the face of the winze and the upper part of the chamber where Bourquist was at work. He further testified that he had finished all this work, and had gone down to the unguarded part of the chamber to remove the loose material therefrom. Upon this general state of the evidence Thomas recovered a judgment for $5,000 against the Mining Company for its alleged failure to exercise reasonable care to provide him with a reasonably safe place in which to work, and counsel for the company contend that this judgment should be reversed on account of four alleged errors in the conduct of the trial below.

[1] The first complaint is that the court overruled the objection that this question was leading:

"Was the character of his [the plaintiff's] work and his duties such that he was compelled to go into any part of the chamber or winze?"

But, conceding that the ruling was erroneous, the record conclusively demonstrates that it did not prejudice, and could not have prejudiced, the Mining Company; for his answer to the question did not state whether or not the character of his duties and his work compelled him to go into the chamber or the winze, and subsequently, in response to such a proper question as, "What were the duties of Mr. Thomas?" to which no objections were made, the witness testified fully to the character of Thomas' work and duties, and to the places where he was required to perform them.

[2, 3] The second and third errors specified are that the court overruled the objection that the evidence sought was immaterial, which was made to the question, "Do you know where he kept his [the plaintiff's] water pail before the accident?" which Bourquist answered that two days before the accident he kept it in the unguarded part of the chamber, and that it overruled, on the ground that it was cross-examination, the objection that the evidence sought was incompetent, and not within the issues made by the pleadings, which was made to the question, "Had you been ordered not to go down there and get a drink?" which Bourquist answered in the negative. It was material and necessary for the plaintiff to prove that he was in the place where he was injured in the discharge of his duty as a servant of the Mining Company pursuant to its direction; otherwise, he could not avail himself of the duty of his employer to use reasonable care to keep that place reasonably safe for him. If, however, he was temporarily in the unprotected part of the chamber, without notice of danger, to get a needed drink from his water pail, which he kept there in close proximity to his place of work, he did not thereby forfeit his right to the protection the discharge of his employer's duty would afford. The evidence of the place where he kept his water pail was therefore material, and there was no error in its admission.

[4] Bourquist was a witness called by the Mining Company, and on his direct examination he testified that he and Thomas had placed a plank near the place where the latter was injured, that Thomas took the water bucket down there, and he did not know whether he placed it on the plank or not, but that he was accustomed to do so. On his cross-examination he testified without objection that he (Bourquist) never had a water pail; that he might have gone down where Thomas' water pail was to drink from it, but that he did not do so on the day of the accident; that Thomas always had a water pail in the unprotected part of the chamber; that he took the pail with him to the bottom and worked up; that two days before the accident he had his pail where he was injured; that he (Bourquist) used to go down there to get a drink once or twice a day, but that he had not been down on the day of the accident. This was the state of the evidence when Bourquist was asked by plaintiff's counsel if he had not

been ordered not to go down there to get a drink. The question was cross-examination, because the defendant had drawn from the witness the fact that he knew that Thomas was accustomed to keep his water pail at the place where he was injured. This testimony opened to cross-examination all that Bourquist knew about the use of the water pail, and the instructions of the employer, if any, regarding that use. One of the main issues in the case was whether or not Thomas had been ordered not to work in and to keep out of the unprotected part of this chamber, where the water pail was, and the evidence was undisputed that he and Bourquist worked together in the upper or protected part of the chamber, and used the water pail in the unprotected part thereof. In this state of the case, testimony in the cross-examination of Bourquist that he was not ordered not to go where the water pail was to get a drink was neither incompetent nor so far without the issues made by the pleadings as to be inadmissible.

[5] The fourth and last alleged error is that, over the objection that it was not proper rebuttal, the witness McDonald was permitted to testify that when he signaled for the skip to come down in the winze it had always stopped wherever they wanted it to stop. The skip was operated by a system of signals by means of bells, whereby the men in the mine notified Mr. Webb, who ran the hoisting engine above, when and where they respectively wanted the skip to stop. In the plaintiff's main case witnesses had testified that he shoveled the loose material into the skip from the lower part of the chamber on the morning of the accident, just after he had cleaned out the winze. To meet this testimony the defendant called Webb, who testified that he knew by marks on the cable to what points he lowered the skip, and that he did not lower it to the lower part of the chamber on the morning of the accident. McDonald was then asked the challenged question on rebuttal, and his answer was followed by a repetition of his testimony in chief that the skip stopped at the lower part of the chamber immediately after Thomas had cleaned up the bottom of the winze. The answer to the question assailed was proper rebuttal of Webb's testimony. There was no error in the trial of this case, and the judgment must be affirmed.

It is so ordered.